We're here today for oral argument. We're going to begin with case 22-2859 Sherwood and Doyle v. Richards. We're going to begin with oral argument from Mr. Edelman. Good morning. May it please the court, counsel. Defendant Richards is the acting head of the Illinois Department of Employment Security, charged with administering unemployment benefits. During the pandemic, 100,000 to 200,000 claims were ignored by the department. We can establish they were received, but no benefits were paid, no notice was given of any sort, nor was there any opportunity for a hearing at which the claimant could establish their entitlement. The two plaintiffs made repeated efforts to get benefits or to communicate with the department, complete lack of success. This is not something the state can do. Unemployment benefits are an entitlement. The state must either pay benefits or provide due process notice and hearing. It would have been very easy to set up a procedure that assured due process. The benefits were paid by having Fifth Third Bank issue a debit card. The message to Fifth Third to issue the card signifies the receipt of the claim. When money is put in the card, the claim is approved. It would have been very easy to set up, as an information technology matter, a procedure whereby the claim must be accounted for. If the message is sent to Fifth Third, either benefits are granted or they are denied with notice and some set period. This was not done, and as a result, literally tens of thousands of claims were not processed. This is a violation of due process. In addition, arbitrarily depriving a substantial number of claimants of benefits or due process while allowing the same to others violates equal protection. Mr. Edelman, before you go too much further, can I just confirm, please, that you are only appealing the District Court's rulings on your equal protection and procedural due process claims against, in the official capacity? That is correct, Your Honor. Okay, you're not appealing any of the other, including the substantive due process? That is correct, Your Honor. Okay, thank you. The District Court dismissed the claims based on a combination of the 11th Amendment and standing, held that the only relief that the plaintiffs were entitled to was money damages, which you can't get under the 11th Amendment, and that there was no standing to seek an injunctive relief because that required that the plaintiffs show they were again likely to become unemployed. This is just wrong. The relief sought was prospective. It's an injunction against failing to provide determination, notice, and opportunity for hearing to any claimant whose claim is not promptly granted. As long as the order is prospective in form, the 11th Amendment is not violated. Mr. Edelman, I think the more challenging argument for you is not the prospective relief, but the ongoing violation, because I think you acknowledge you have to have both in order to have standing to pursue this claim, given the underlying sovereign immunity issues. What's your best argument that the denial of this one-time hearing for unemployment benefits is an ongoing violation? Relief against the deprivation of due process is considered ongoing and prospective until due process is provided. That was established by this Court's Holbrook decision, it's 1981, where claimants were entitled to a hearing even though the issue was whether they should receive Section 8 housing subsidies for past periods. There's also a Second Circuit case, Capps v. Wing, involving LIHEAP benefits, a home energy subsidy paid during the winter months only, and the Court held that the claimants were entitled to due process until those claims were decided, even though... There was an ongoing need for the underlying services. It wasn't something that they were seeking a hearing for something that they didn't get in the past and they no longer needed. I would say that is not correct. In Holbrook, the Section 8 benefits were entirely for past periods, so anything that they needed currently they were getting, they had not been given a notice and hearing with respect to a past period, and that was entitled them to due process. Same thing with Capps. Even if the present... It took about two years from filing to adjudication, so even if the problem had been corrected and people were getting prompt one or two years of prior year subsidies, and the people were entitled to due process. Mr. Edelman, let me ask you with regard to the post-deprivation remedies. Is seeking mandamus in Illinois State Court an inadequate post-deprivation procedure? It is, for several reasons. First, under the Pro Sports Bar case, an adequate state remedy is one that rectifies the basic harm, in this case, payment of benefits. For example, in Parrott, the adequate remedy was a tort claim for the value of the inmate's property that was destroyed through negligence or intentional conduct by some prison employee. This goes to Judge St. Eve's line of questioning. If what's being sought as injunctive relief were not focusing in on the damages of these plaintiffs' own unemployment benefit applications, correct? That's correct. We are focusing on the lack of a hearing. Now, the reason that mandamus... There are other reasons why mandamus isn't adequate. But you just said that, in response to Judge Brennan's question, that mandamus would be inadequate because they couldn't get their money back. It would only get them the hearing. But that's the relief you're seeking here. That is correct. So why wouldn't mandamus be sufficient based on the claim you've brought here? Because it is impracticable. Even if it could be brought on behalf of a class, which is unclear, it is basically a negative value proposition. But if it gets you the hearing, I understand your clients probably want the underlying monetary relief, but given sovereign immunity, they can't sue for that here. So you have instead cast this as a procedural due process that they're entitled to the hearing. So if the state remedy of mandamus gets your clients the hearing, but not the money, necessarily, why wouldn't that be sufficient to address what you are telling us is the due process concern here? Because the entire unemployment benefit hearing is one that's supposed to be handled by a layperson without the assistance of counsel. I think it is completely— I don't understand why mandamus wouldn't address that. What's the relevance of that? Because it is—I just find it incomprehensible that tens of thousands of people would file individual mandamus actions. They're not going to find attorneys. They can't, by definition, afford to pay an attorney. There's no fee shifting in mandamus, and the person would not even think of such a remedy. In fact, mandamus is something that came up for the first time in a defendant's brief on appeal. Judge Alonzo was inquiring about what the state remedies might be. This was not mentioned at all, and it comes up for the first time in a response brief. It is something, though, that comes up in the administrative context. When one is seeking this type of relief, mandamus is often a vehicle, isn't it? Sometimes, but where you have a systematic problem of this sort, it isn't. In the Leahy case, in the Second Circuit, the New York statutory mandamus remedy, Article 78, was not considered to be an adequate remedy, and the Parrott argument was rejected. This case involves a specific flaw in the defendant's procedures that results in the systematic deprivation of due process. It is more akin to the Zinnerman case, the one involving the Florida mental health commitments, where people were first asked to sign a voluntary commitment and nothing specifically required the mental health personnel to determine that the person was sufficiently competent to sign away their rights to a commitment hearing. This is the same sort of thing. There is nothing that— because the supplemental procedures already existed in Zinnerman, and the state just didn't pursue them. Well, here, they just didn't set up the procedures. But that's a distinction. I think it's one in our favor. If Parrott doesn't apply in Zinnerman, where the procedures exist, but the personnel are not instructed to carry them out, here we have a situation where the procedures could readily be set up, but they're not. And as a result, thousands of people are on a massive basis deprived of due process hearing. I also think that it does make a difference if this entire procedure is supposed to be done without the assistance of counsel. As early as Goldberg v. Kelly in 1970, the Supreme Court held that you must tell people how to get a hearing, what their rights are. Quotation is, the opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard, close quote, that's 397 U.S. 267 to 9. The person had to be notified. This is what you do to get a fair hearing. No such notice was given here, either of the potential of seeking relief in state court or of the supposed remedies that Judge Alonzo referred to, which I don't believe are remedies. One was an appeal for inaction, which I don't think is authorized by what was cited. And the other is a provision in the administrative code for submitting late certifications. That applies to continued benefits, not to getting certified in the first instance. And neither of those remedies are anything that the applicant is informed of. Would you like to reserve the remainder of your time, Mr. Edelman? Yes, Your Honor, I would. Very good. Thank you, Mr. Edelman. We'll now hear argument from Mr. Griffiths. Mr. Griffiths. Good morning, Your Honors. Good morning. May it please the Court. Assistant Attorney General Carson Griffiths on behalf of Kristen Richards, Director of the Illinois Department of Employment Security. So, this Court should affirm the dismissal of this action on either of two independent grounds. First, the alleged past deprivation of plaintiff's unemployment insurance benefits without a hearing for purposes of Article III standing to support their claim for prospective injunctive relief. And second, even if plaintiffs had standing, they failed to state either procedural due process or class of one equal protection claim. So, turning first to standing. As this Court recognized, the plaintiffs and Plaintiff's Counsel recognized, they only sought prospective injunctive relief here in recognition of the Eleventh Amendment's bar in seeking damages against Ms. Richards in her official capacity. And their alleged injury was the deprivation of unemployment insurance benefits without a hearing. But any alleged deprivation of those benefits ended in July 2020 when plaintiffs were rehired and they were no longer eligible for benefits. So, they alleged a past injury alone. And as the District Court recognized any claims that plaintiffs might lose their jobs again, apply for unemployment insurance, and have those claims ignored would be speculative. If they were still unemployed, would they be able to pursue this? Yes. Mr. Griffiths, it strikes me that we're not debating the standing law as much as the reading of the plaintiff's complaint, because if the plaintiff's complaint is read as them not receiving a final determination, a notice, an opportunity for hearing, that's the way the plaintiff is, the plaintiffs are characterizing it for purposes of this ongoing violation. What are your thoughts on that? My thoughts on that are, first of all, plaintiffs didn't characterize their complaint that way. I would note that the Second Amendment complaint identified the property interest affected here as the unemployment insurance benefits themselves. In the response to the motion to dismiss here, they said that injunctive relief is essential to remedy the ongoing harm already inflicted on plaintiffs, namely the deprivation of benefits to which they were entitled. So, plaintiffs have characterized that in the District Court. Also, to the extent they tried to characterize their claims as directed at just the deprivation of a hearing alone, that's not sufficient to confer Article III standing for three reasons. First of all, an ongoing denial of a hearing alone isn't a due process violation. So, saying we didn't get our hearing without the underlying deprivation of the property interest ongoing would just be not a due process violation that would support Article III standing. Also, without an ongoing denial of the concrete benefits themselves, an ongoing denial of a hearing is just a bare procedural injury, which the Supreme Court has recognized is not sufficient to establish a concrete injury for purposes of Article III. And third, claiming that the Department was not complying with its state laws requiring hearing, notice, and other procedural protections would raise Eleventh Amendment concerns, because that claim itself would be barred by Pennhurst. So, that's why either way plaintiffs want to characterize it here, there's no standing. So, would there never be any standing in an allegation of insufficient process? No, that's not what we're arguing at all. What we're arguing is that, to the extent plaintiffs had standing, it was to seek damages for, retrospective, the past injury that they're alleging, the improper denial of benefits. But, they elected here to abandon their individual capacity claim against Ms. Richards, recognizing that she wasn't the director when they filed their claims for benefits, and rather than trying to identify a defendant who was personally involved, just chose to pursue this official capacity claim. So, they really have cabined themselves in doing so. Is there any way they could get their money back at this point? As your Honor's pointed out, they could proceed to state court in a mandamus action, try to compel the Department. We're not conceding that mandamus would be the appropriate relief, however, that would be an avenue by which they could try to get the... They might get a hearing through that, but could they get money back through that? They could try to seek a determination from the Department as to whether they're eligible or not. The Department might decide they were, and then pay money. Otherwise, if they didn't, they could pursue the administrative appeals process all the way through the Illinois Circuit Courts, Appellate Courts. Is that untimely at this point? I don't believe so. The question of the statute of limitations applicable to mandamus is a little unclear under Illinois case law, but most cases alleging a deprivation of property usually involve a five-year limitations period. So, I can't confirm because the Illinois Supreme Court hasn't settled that question, but some Appellate Court decisions have said that that's the case. So, plaintiffs would certainly have an argument that their claims would be timely. Also, to the extent that Ms. Doyle claims she never got the debit card that she should have gotten, or Mr. Sherwood claims that he should have gotten some money on the debit card he did receive, there were internal Department procedures laid out in our brief for those kind of claims of misdirected payments or misdirected funds, and plaintiffs didn't pursue those either. Were they put on notice of those? I don't believe so. However, as with any administrative proceeding, plaintiffs are presumed to have knowledge of what the law states, but no specific notice as far as I know. But it's not in the record in this case. Just touching briefly on plaintiffs' reference to the Holbrook decision, I want to emphasize that in footnote 42 of that case, the court noted that plaintiffs had abandoned their claim for injunctive relief. So, it's really not on point here because we have a claim where the only relief sought is injunctive relief. Also, I would note that Holbrook is pre-Lujan, pre-Lyons, pre-other more recent Article III standing cases by the U.S. Supreme Court. So, to the extent that plaintiffs were seeking injunctive relief, it might be of questionable persuasive value here.  So, turning then to the substance of the procedural due process claim, unless this court has any questions on standing. I want to emphasize at the outset that plaintiffs' discussions of Zinnerman and Parrott are not discussions that this court need to engage in because the whole question of whether a deprivation of a property right was random and unauthorized under Parrott only determines whether a pre-deprivation hearing is required or a post-deprivation hearing is required. And here, plaintiffs have recognized multiple times they're only seeking a post-deprivation remedy. So, they're not seeking a pre-deprivation hearing, which would be a circumstance where Parrott wouldn't apply. So, this court can skip right to the question of whether Illinois provided them with an adequate post-deprivation remedy, which it did as we discussed Mandamus and also the department's internal procedures. On the points that counsel has raised in his reply brief and argument today about Mandamus being an inadequate remedy, first of all, those arguments don't address this court's cases recognizing that Mandamus is an inadequate remedy. The Clevin decision and the Flower Cab decision cited in our brief. They also are incorrect that Mandamus can't be pursued as a class action. They cite cases predating the modern Illinois Code of Civil Procedure, which says that all of its provisions, including the provision allowing for class actions, apply to actions for Mandamus. And in any event, even if they were right, it couldn't be pursued on a class basis. They haven't cited any authority for the proposition that a state remedy is considered inadequate because it can't be pursued on a class basis. And also, no class was actually certified in this case. So, just as they're pursuing individual actions at this stage in federal court, they could pursue individual actions in Mandamus in state court. As to the inability to obtain a monetary remedy, as Judge Brennan, your questions sort of fleshed out, plaintiffs aren't seeking a monetary remedy in this case. They want a hearing and notice. And Mandamus could certainly be used to try to compel the department to do that if they were ultimately entitled to it. And on the question of attorney's fees, it's clear that a state remedy isn't considered inadequate just because plaintiffs can't get everything they could get under Section 1983. Parrott and this court's decision in Easterhouse made that abundantly clear. And the question is whether the state remedy can recompense plaintiffs for the alleged constitutional deprivation. And again, plaintiffs are seeking a hearing, and that's what Mandamus could do here. So, for those reasons, Mandamus is an adequate remedy. And one further point on Mandamus, counsel argued that it can't be used to address systematic or system-wide issues. I don't think that that's correct. Mandamus has been used to remedy large issues. In Illinois law, for instance, the Schemf decision cited in our brief  prevailing wages for union employees. And the court in that case actually awarded Mandamus and said, yes, you have to post these so that then plaintiffs can pursue the administrative hearing process if they think the prevailing wages are inadequate. Is your argument impacted at all by the fact that this is a class action, as Mr. Edelman suggested? No, it's not. And why not? First of all, because no class was certified in this case. This is still an individual action. And secondly, as I mentioned, even if a class had been certified, there could be a class action for Mandamus pursued in the state court. So either way, they would have an adequate remedy, and that remedy would remedy, not to repute myself, remedy the underlying deprivation of a hearing, as alleged. And just briefly to touch on the class of one equal protection claim, plaintiffs have characterized that claim as a class of one claim against Richards in her official capacity. So they had to allege facts showing that the department intentionally established a policy or custom of irrationally depriving them of eligibility findings and determinations. And that's not what the complaint describes. As this court has emphasized, class of one equal protection claims have to be really carefully limited to avoid converting ordinary mistakes in the administration of government into federal claims. And here what the complaint describes is the department struggling to process and respond to calls that resulted from a huge spike in unemployment insurance claims in 2020 as a result of the COVID-19 pandemic and the resulting shutdown of the economy. So what we have here is at most a department that was struggling to handle those claims, not something where the department, as a system-wide policy matter, decided, we're going to single out Mr. Sherwood, we're going to single out Ms. Doyle, and throw away their claims so that we can improve something called claims processing statistics, which, as we explained in our brief, really don't even impact the federal government's evaluation of the Department of Employment Security's performance in administering the unemployment insurance program. So unless this court has any further questions. Thank you. Thank you, Mr. Griffiths. We'll now move to a rebuttal argument from Mr. Edelman. Very briefly, Your Honor. If defendant's position in injunctive relief is accepted, any entitlement to something which is good for a specific period, six months for ordinary unemployment benefits, nine months for pandemic unemployment benefits, about three months for home energy assistance, is no longer an entitlement. It's unenforceable. By the time judicial relief can be had, the period for which you're entitled to benefits will have passed. So that's the consequence of the argument. Well, it might be enforceable just through other mechanisms, not a federal due process claim. I submit that under the Bradley v. Village of University Park case, where you have a systematic deprivation of due process by the state or their municipal officials charged with providing due process, you would retain your federal remedy. The fact that conduct violates both state and federal law does not mean that you do not have your due process or equal protection remedy. With respect to the equal protection issue, there is no difference between the claims that were allowed and those that were discarded. If 200,000 people seek to call to establish eligibility, which is what they're directed to do, and only 15 percent or 30,000 can get through and 170,000 are ignored, then their statistics are greatly improved. If you simply ignore the 170,000, 30,000 people got through, 30,000 people were adjudicated on the merits. To suggest that this is an appropriate course of conduct, I think, for state officials to engage in is completely outrageous. Other states did not have this problem, and there is no reason why this persisted for literally years. This was still going on in 2021, for example, and it's still going on at present. With respect to the Holbrook decision, I suggest the court look at pages 1280 and 1281, where it says that it's a signiquant none that all tenants receive prompt notification of their right to receive such payments retroactively. Due process would require that the tenants receive a written statement setting forth the reasons for any denial of retroactive benefits and the opportunity to challenge the sufficiency of those reasons. Appellants must receive some sort of hearing before retroactive benefits are finally denied. The fundamental requirement of due process is the opportunity to be heard in a meaningful time and in a meaningful manner. On remand, the district court should determine the precise contours of the requirements of procedural due process in the context of this case, giving whatever regard is appropriate to the contract remedy we have provided to presently certified tenants. Thank you, Mr. Edelman. Thank you. We appreciate your advocacy. Thank you, Mr. Griffiths. The case will be taken under advisement. Thank you.